IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER 262-676-9536 | Case No. 25-SW-144<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Morgan Morgan, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number **262-676-9536,** (the "Target Cellular Device"), which is described in Attachment A.

2. I am a Technical Special Agent with the Department of Homeland Security, United States Secret Service ("USSS"), and have been employed in this capacity since April 2010. In my capacity as a TSA, I am responsible for investigating financial and electronic crimes, which include counterfeiting of U.S. currency, or other U.S. government obligations; forgery or theft of U.S. treasury checks, bonds or other securities; credit card fraud; telecommunications fraud; computer fraud; identity fraud; money laundering; and other crimes affecting federally insured financial institutions. I also received specific instruction in the investigation of cellular device tracking, including but not limited to cell phone tower operations, and cell site simulators. As part of this

instruction, I received training related to identifying the techniques and methods employed by the groups and organizations involved in these types of crimes.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. One purpose of applying for this warrant is to determine with precision the Target Cellular Device's location. However, there is reason to believe the Target Cellular Device is currently located somewhere within this district because the Target Cellular Device's owner is known to spend most of his time in this district; the telephone number area code associated with the Target Cellular Device corresponds to this district; and the Target Cellular Device's owner was seen in this district recently. Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Device outside the district provided the device is within the district when the warrant is issued.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that **LUCAS GILLIAM** has violated Title 18, United States Code § 1028A and Title 18, United States Code § 1029(a)(2). **GILLIAM** was charged with these crimes on **05/22/2025** and is the subject of an arrest warrant issued on **05/22/2025.** There is also probable cause to believe that the Target Cellular Device's location will assist law enforcement in arresting **GILLIAM**, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

6. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18

U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

7. The Tennessee Sports Wagering Council (hereinafter, "SWC") is a regulatory organization which monitors the activity involved with placing sports bets through the Internet in Tennessee.

8. In June 2024, SWC received a complaint from Fanduel Group, an on-line betting company, which had identified hundreds of accounts that had been created/accessed at 7854 Fallstone Road, Memphis, Tennessee. These accounts were created with identifying information from people located throughout the country. Many of these accounts were already closed due to identity theft, deposit fraud and charge backs at the time of notification to authorities.

9. Fanduel also advised they had identified hundreds of accounts created with identifying information from people located throughout the country geolocated at 2977 Lauren Drive, Bartlett, Tennessee with identity theft indicators.

10. In September 2024, FBI and USSS agents executed the search warrants at 7854 Fallstone Road, Memphis, Tennessee and 2977 Lauren Drive, Bartlett, Tennessee.

11. At Fallstone Road, **LUCAS GILLIAM** was at the residence. During the search, investigators found phones between **GILLIAM's** mattress and box spring which matched the type of phones used to create accounts in this scheme as well as over $250k in cash in the bedroom.

12. At Lauren Drive, NATHAN PENAFLOR (NATHAN) and JOSHUA PENAFLOR (JOSHUA) were at the residence. During the search, investigators found over 100 phones located in NATHAN's and JOSHUA'S rooms which matched the type of phones used to create accounts in this scheme.

13. In October 2024, FBI and USSS agents executed a search warrant at 6464 Wells Farm Cove, Bartlett, Tennessee.

14. At Wells Farm Cove, LAWRENCE WILLIAMS was at the residence. During the search, investigators found a phone which matched the description of the phones used to create accounts in this scheme.

15. Through interviews with NATHAN, JOSHUA and WILLIAMS, it was determined they traveled with other members of this group to conduct this scheme in other states. In these interviews, LAVONTE HOLMES and **GILLIAM** were identified as other members of the group who were involved with this scheme.

16. SWC provided documents on the address 7514 Kylan Drive, Memphis, TN 38125, which is known to be an address associated with HOLMES. The data provided showed the same scheme of creating/accessing accounts of people with identifying information from throughout the country.

17. On May 22nd, 2025, **GILLIAM** and HOLMES were indicted by a Federal Grand Jury in Western District of Tennessee with unauthorized use of an access device under 18 U.S.C. § 1029(a)(2) and aggravated identity theft under 18 U.S.C. § 1028A. *See United States v. Gilliam et al.*, 25-cr-20115-SHL (W.D. Tenn), Dkt. 1.

18. The phone number listed in this warrant was provided by SWC via Fanatics as the phone number for **GILLIAM'S** Fanatics Account. This number is still believed to be used by **GILLIAM**.

19. The Target Cellular Device was provided by SWC as a device associated with **GILLIAM**. Through proffers and other investigative techniques, the Target Cellular Device is

known to be associated with **GILLIAM**. I believe there is probable cause to monitor the cellular device for the next thirty days in order to effectuate a safe arrest of **GILLIAM**.

## MANNER OF EXECUTION

20. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

21. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

22. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target

Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

24. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and [continue to] flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

25. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

26.   I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.]]

27.   A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

*mmorgan*
Digitally signed by mmorgan
Date: 2025.05.27 11:49:20 -05'00'

Morgan Morgan
Special Agent
US Secret Service

Attested to in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone

Sworn to and subscribed before me by telephone this 27th Day of May 2025.

_____
HONORABLE TU M. PHAM
CHIEF UNITED STATES MAGISTRATE JUDGE